Good morning. Good morning. My name is Rick Hearn and I represent Trenton Powell. This is a case that I would like to both simplify and complicate in oral arguments. Simplify by going to one half of one argument that in the brief and in the other parts of the brief I believe since I wrote it that they're well set out. On the motion to suppress having to do with the six-day delay is what I would like to talk with this panel about. It complicates things because they're two Supreme Court cases that are dealing with a problem that at my age I'm not sure I understand so well about cell phones although because I have grown children they've taught me a lot. The issues raised in Raleigh v. California had to do with a seizure of a cell phone incident to an arrest. Now that seizure of that cell phone was had to do with a driving infraction but ended up with evidence relevant to gang affiliation because that was on a Mr. Raleigh's cell phone and possibly a murder committed in the past. In our case in Powell, Mr. Powell's case is distinguishable from that except for it was a seizure incident to arrest of a cell phone but it was at the culmination of an eight-month investigation. Eight months earlier an arrest warrant was made based upon allegations of child sexual abuse occurring eight months earlier. Now that sexual abuse had occurred ten plus years before the arrest and so when they arrested my client Mr. Powell for sexual abusing a minor ten years earlier. That was his stepdaughter, correct? Excuse me, sir. That was the stepdaughter he abused, correct? Yes, and it's not real great but allegations that he abused other young children as well. So when they arrested him the officer, Detective Sampson, seized the phone without a warrant but didn't know whether he really should have seized it or not and it came out in the motion, the hearing on the motion to suppress that because this had happened ten plus years ago and people had multiple iPhones over that time that there would be any evidence on this iPhone. It wasn't a container probably of evidence from ten years ago. But your argument is that somehow he had to do something within less than six days. What he did was he hung on to it. He gets a warrant six days later and then he tries to open it but then there's a delay but you're saying that during that six days he should have returned the phone? No, sir. That's your argument? No. Looking at the six, it is a suggestive of that in the briefing and that is one argument but the bigger problem is that during those six days they determined evidence which was a Right. That evidence that the court found justified exigent circumstances, the district court found, that phone call wasn't, hadn't been made, wasn't present when the phone was seized. When the phone was seized, though, it was on airplane mode, was it not? I don't want to venture too far because I might be less technically adept than you are. Unlikely, but yes. Believe me, I probably could be so I'll give you the benefit of the doubt but the point is is that was on, it's no dispute, the phone was on airplane mode, could not be reviewed in any way shape or form. That's correct. It was also put in a Faraday box. No one could even get into the contents at that point in time. No one could. And nor did anyone try. That, I'm sure, the government will argue that they did try but it was ineffective. There's no way they could have. But the issue is is when they then go back after six days with the warrant, the primary focus of the warrant isn't anything that they had before during the eight-month investigation. They've added this phone call in which the district court found to be exigent circumstances justifying the continuing holding on to the phone for a long time because there was, I just, because there was no way the government had to break into the phone, 71 days. But the main point that I would like to ask the court to concentrate is in Raleigh v. California, we need something besides what the Supreme Court said. And so I have to say what the Supreme Court said in Raleigh. When a phone is seized, what should the government do? And in the last line of the opinion in Raleigh, it said, get a warrant. Well, did it mean investigate further, talk to co-conspirators, you know, maybe get a confession and then get a warrant? Or did it mean get a warrant right now? Well, it is instant to arrest. Well, they did get a warrant. They did, in six days. And so you're saying the six days was unreasonable? Yes. And of course. You're saying they should have gotten the warrant irrespective of that phone call that says, hey, wipe the phone? Both is, yes, Your Honor. Under the, so the way the law is, check my time here, is we don't have good case law from the Supreme Court about seizing cell phones despite this. So we go to McArthur, Illinois versus McArthur, a seizing of a residence. And then we take the four rules there. And one of those, number two, is exigent circumstances, which they did not have when they seized this phone. But they used those six days in order to get exigent circumstances, which then they tell the district court, I mean, the magistrate, we have that he's trying to wipe the phone. Well, let me quarrel a little bit with your language. They used the six days in order to get the circumstances, what you just said. Well, I'm not sure they anticipated what they were going to get. It turned out during the six days, he does something that just kind of walks right into their hands. But that was not their intent. They seized it. The during that period, he says wipe the phone. It's not as though they entrapped him. It's not as though they expected that. That was just a delay because of the nature of the guy's business. That certainly, I don't know what their intent was. But the problem is the first factor, I talked about exigent, the first factor in the McArthur factors is do they have probable calls to start with? And there can be a debate about that, but they didn't think they had enough probable calls or take it seriously enough to get a warrant then, before the phone call. Then when he in Copeland, I thought the record is that they got the phone, put it in airplane mode so nobody could get to it. Then the detective started drafting the warrant the very next day. But then he had a few days off. So then the next time he was at work, he finished the warrant. So in the interim, this suggestion of wiping the phone evidence come up. I don't see how the detective wouldn't put it in, right? You would expect that's a pretty good piece of evidence. So then he included that. I just don't see what's unreasonable about that. There is nothing unreasonable. It should have gone into the warrant in order to search the phone under Raleigh v. California. You need to have a search warrant to search the phone. So it should have. Also, if a co-conspirator had confessed or maybe he'd confessed, everything that the police have should go into the warrant. But we cannot, we have to understand that six days later, you may have a lot more to put into the warrant than you do when you seize the phone originally. And in this case, they did. I mean, they did. So, and as pointed out, there really weren't exigent circumstances. There's no way he's going to be able to wipe anything or his family's going to be able to. And of course, he has a legitimate reason to want, called the Fourth Amendment, he wants to protect his privacy. And he says, I don't, I want everything off my phone wiped for my privacy. I don't want you to be able to see it or any government to. And of course, that can always be used as evidence. There must be something illegal on your phone. So we have a right to have a warrant or privacy probable calls. Okay. So that would be, that would be one of the, that would be the first of the three MacArthur factors in terms of balancing privacy and law enforcement concerns, right? Yes. I mean, the first of your argument is, is that of the four MacArthur factors as to Illinois versus MacArthur, the first three are satisfied, but it's really your argument is based totally on the fourth delay is no longer than necessary to diligently obtain a warrant. Well, in MacArthur, number three isn't satisfied. Number three, the number three is police officers, reasonable efforts to balance privacy and law enforcement concerns. Let me address that. Yeah. When I look back, it's not that I knew MacArthur by heart. When I looked back at MacArthur, I see that what the court found in that Supreme Court case is they didn't arrest Mr. MacArthur. The facts were his wife says, my husband is a criminal and he's got drugs and he's hiding it in the house. And they take 26 hours, I think, in order to get a warrant and come back. Okay. So, but they never arrested them. They just said, you can't go in the house. Here, there's a different circumstances, but they arrest him, record his phone calls with his family, which has a warning on it. I know that's allowed. And then they use what they find during his custodial arrest in order to get the warrant. So, the arresting part was important. That is not a reasonable balance because they used that to get a warrant that they, that I'm asking this court to hold, that you need to get the warrant, not wait six days, if you have probable cause. Take it to a magistrate. That is reasonable. And that's what, especially for a cell phone, and I'm not going to review and I don't have time to review all of the things that make a cell phone reasonable to get a warrant. But I do want to mention one thing. Please look at Raleigh because they talk about connecting to the cloud and how you get past crimes, the difficulties, putting it in a Faraday box. That's all in Raleigh v. California to describe how important it is. The problem with Raleigh is they say the solution is get a warrant. When get a warrant? What can you do until you get a warrant? How long do you have to get a warrant? And we need, we in the CGA and the government, we need more. I don't want a bright line rule, but what kind of factors should we use to protect our privacy when a phone is seized, a cell phone, not other kind of things, without a warrant? There's no evidence of staleness in this case, correct? No. Staleness is not an issue here. That's correct, Your Honor. Did you want to save a couple of minutes? I will save the remainder of my time. Thank you. May it please the Court, my name is Justin Paskett, and I represent the United States in this matter. I'll begin by responding to some of the issues raised by defense, and I do want to cover some of the other issues that were not raised in defense's argument. With regard to the counsel, can I have you start by addressing the 70, 71 day delay? Yes, Your Honor. Do we have cases that talk about how long law enforcement can retain a phone while waiting for technology to develop, allowing you to break into a phone? Your Honor, there is no clear line about what the exact range of days is that can be delayed. When we're looking at the length, certainly... So we're looking at reasonableness? It has to fall within reasonableness, and certainly if something was held for 10 years, it would be a clear argument to say that's unreasonable to hold something for that period of time. A specific factual analysis in each individual case is important, and as can be seen, while the 6 day period of time has already somewhat been discussed by the court, and I can return to that, after the warrant was obtained, after the 6 days between the seizure and the warrant, law enforcement attempted to execute that warrant. They were unable to execute the warrant because at the time, the forensic tools they had were not sufficiently caught up with the technology of the phone itself. This was an iPhone 12, right, that had just been produced? That's correct, Your Honor. And it was a matter of what, 6 weeks or less than 2 months prior to the seizure that it had just been created and put on the market? That's correct, Your Honor. And at the suppression hearing that was discussed, the time period, sort of the lag or delay behind the forensic tools that law enforcement uses to open these devices, and the updates that come out through the devices to make them more and more difficult. What kind of a record do we have as to what happened in the past with respect to new issues of iPhones, how long it takes to get the forensic software? I mean, was it a reasonable expectation that they would get the new software within more or less the period they got it? I mean, did they know how long they were supposed to be waiting or should be waiting? Your Honor, there was no set time frame, there was no guarantee. I understand that, but is there a practice or a custom or is there some reasonable expectation we tend to get the new software within X months or whatever? Your Honor, at the suppression hearing there was testimony that this sort of, I suppose you could phrase it as a cat and mouse game of a continual chase of forensic developers or forensic software developers that develop the programs used by law enforcement are continually a few steps behind, but do in fact succeed after some period of weeks or months and that there wasn't an expectation. What was that testimony? Because I think that's a good fact for you that there is this pattern of new phones being released and then the forensic tool can't break into that phone, but then eventually the technology catches up. But was there testimony as to duration, historical duration of how long it takes for the new technology to catch up? Your Honor, I will look specifically for that to be addressed. In the record at that suppression hearing there was testimony, and I want to be careful not to improperly quote that testimony. Well, that's fine. If you can't readily, I read that portion. The reason I'm asking about this, Counsel, is that this is technology and it changes very fast. And so you can certainly envision scenarios where all kinds of encryption technology gets developed and somebody basically encrypts the information. I don't think we can have the government hold on to the device for a substantial period of time waiting for technology to develop, right? I mean, I don't know how long that substantial period of time would be or at what point it becomes unacceptably long, but I don't know that we need to deal with it in this particular case because you do have a suggestion that the new model comes out and then shortly thereafter the forensic tools basically catches up to allow you to open up that phone. And that was the testimony, Your Honor, that there was an anticipation and there was a continual checking of whether or not that software update was capable of doing it. And it was on that 71-day mark that that was ultimately . . . But encryption technology, the government can't just hold on to that phone forever or . . . Your Honor, I believe I . . . . . . you know, past the 6-month, 8-month, a year mark while waiting for the technology to catch up? I think that's a very fair question from the Court and I think I can articulate that the government in this case, law enforcement specifically, that was attempting to access and execute the warrant for the first time through these forensic tools, had a good faith belief that in . . . That was a testimony of Mr. Christofferson, is that his name? Yes. Forensic . . . I thought he testified that he . . . that the government would eventually be able to get into the Apple iPhone 12 and they were expecting to get . . . be able to do that at some point. That is . . . that is accurate. I mean, they didn't put a . . . they didn't put a time frame on it, but they said we are will be able to get into it at some point. And I suppose to answer the question, while I don't know what the outer limits might be, what we do know in this case, Your Honor, is that it was 71 days. And so I suppose for the purpose of today's hearing, the government's position is that 71 days was reasonable under the circumstance and perhaps it would have been helpful to have a finer point put on prior approximations of how long previous updates had taken to give them a . . . that continued good faith belief that there would be an update in a reasonable amount of time. But what we know in this case is there was an expectation that that update would come out, that they would be able to access that phone. And in fact, that did occur at approximately that 71-day mark, a little over two months. And under the circumstances, the District Court found that their diligence in continuing to check to see if the updates or if the updates they had received would open the phone over that period of time. One other thing they did that the government is of the position was not even necessary, but they did do, I think, also showing reasonableness and good faith, is they continued to renew that warrant with the State District Judge, which it's the government's position that there was no necessity to renew the warrant where they were unable to execute it. It was not a warrant that they were renewing as if they needed another warrant, but rather they did that, showing that they were acting in good faith, holding that phone. And it's the government's position that as they've never executed it, that step was even unnecessary, but goes to the reasonableness of what they were doing in their good faith belief that they would be able to access that. If there are no other questions about the search of the phone or the delay, I do want to address a few other issues. One of those that was raised by defense is the issue of the defendant during the course of trial counsel attempting to bring in evidence of Jane Doe One's prior relationship with a boyfriend during the course of around the contemporaneous to the time period that she was being sexually abused by the defendant. And specifically, when Jane Doe One had testified on direct examination about one of the exhibits that was of the charged conduct of her engaged in an act of oral sex with the defendant, that's what she testified to, there was an image of Jane Doe One where you could clearly see her face and performing an act of oral sex. You could not clearly identify the face of the person that that was being done on, and her testimony was that she identified that as the defendant. She had identified that as occurring in his house, in his bedroom. And she specifically, when asked, had stated that he was the only person that she had performed oral sex on. There's a 412c notice issue in this case, right? Yes, and the government objected on that basis. Well, government objected on the basis of the lack of notice. Under Rule 412. Correct. Correct. And the court held a hearing during the course of trial outside of the presence of the jury. Defense was allowed to provide proffered evidence of the prior boyfriend, and the first question that was asked by defense was whether or not during that time frame, the boyfriend and the victim, Jane Doe One, the charged victim, had engaged in oral sex, and his response was yes. However, as the hearing continued, he was shown images, or was asked if there was ever any images of them engaged in sexual acts produced or taken. He said there were not, and he was shown some of the images that were not of sexual acts but just of Jane Doe One nude, and he said he did not recognize those images. The court ultimately ruled that as raised, the issue did not go specifically to a specific piece of evidence because he denied the specific items of evidence that were entered. Defense objected, and I think this is maybe more where some argument by the government needs to be developed on the basis that not allowing him to address the single statement that she did not perform oral sex on anyone else, that's how she knew it was the defendant, she should be impeached on that or be allowed to be impeached on that because the prior boyfriend did testify that they had engaged in oral sex. I want to address two parts of that. One, it still has limited probative value, and with the statement as it was, the argument with regard to, and defense cited Davis v. Alaska about the defendant's right to impeach a witness and whether or not that would fall within an exception of 412 for confrontation, I would refer the court to United States v. Bonanno, which is a Ninth Circuit 1988 case, and specifically addressing cross-examination and the right to confront. Once cross-examination reveals sufficient information that which can appraise a witness as possible bias and motives, confrontation demands are satisfied, I would argue and refer the court to the record here that there was significant cross-examination done by defense counsel during the course of trial that went to the honesty, the bias, the motive of Jane Doe 1. She was thoroughly cross-examined. This particular issue, I would also note that the proffer provided by defense counsel was limited, and with the information in the proffer, there was no way to even determine whether or not what the prior boyfriend was testifying to was applicable and would in fact impeach what Jane Doe 1 said. She specifically was quite vague that the defendant was the only person she gave oral sex to. The question asked to the prior boyfriend is, during the time from they dated, did the prior boyfriend and her engage in oral sex, or did she engage in oral sex with you? There was no question as to where. The question and testimony with regard to Jane Doe was also not clear. She could have been testifying solely in the defendant's bedroom, if that was the case. Didn't the prior boyfriend also state at some point in time he had never recorded any oral sex? He did. He specifically said there had never been any recording to his knowledge. He said that. He also did not state, there was a question about the time frame he dated her in the proffer, but the time frame with regard to when Jane Doe 1 was referring to was not further established or narrowed sufficiently to show that she was testifying inconsistently or that... I'm not sure where you're going with this argument. Are you saying that this was totally irrelevant? I mean, if I were the defense, I would definitely want this in because it says that she's not telling the truth on this particular point. Your Honor, I'm saying it's marginally relevant given that it did not go directly towards any of the specific items of evidence based on the proffer of the boyfriend, and it's not even clear that her testimony was inconsistent or dishonest because the nature of the proffer didn't... The photograph was not visible as to who the individual was. Correct. So you have the boyfriend saying nothing was ever recorded, and you have a photograph that really can't identify who the person was, but you have evidence that the boyfriend says we were never recorded. So it becomes somewhat tangential, it seems to me. I would agree with that, Your Honor. I would also note that just the nature of the proffer didn't narrow it down to time frames. Yes, but it seems to me that it makes her testimony inaccurate because she says nobody never except this one person. But there was... I understand the court's position. As there was no time frame... It may not be a big point, but it seems to me that it would prove that she was not telling the truth. If it was more specifically narrowed to a time frame, place, or location, she's... Why do you need location? Because the issue is when, not where. Well, it was unclear from her statement whether or not she was being more specific or if it was ever. It seems to me I'm okay with you on the 14-day problem, but... If there are no other questions, I recognize my time is up. Probably a good time to get out then. That's fine. Thank you. You're out of time anyway, so we appreciate your argument. Thank you. I would ask... Judge Fletcher gave you a good exit line. Thank you. I would ask that the court affirm the conviction. Thank you. Thank you. I'll try to correct my mistakes of not covering some things. Because it's abuse of discretion, I left off a lot of things, including 412. The issue in 412 is can you really require notice for impeachment? That was... This was... There was no notice. The 14-day notice, and we... The defense counsel just could not supply notice for that impeachment. But I'd like to move back to the 71 days, Your Honor. There is no limit in the record for how long it was going to take these... Right, but the anticipation that the technology would catch up, that's a good factor for the government, right? Yes, Your Honor. I can understand that, but what the anticipation... Who is the government? The government, the officer who seized the phone, didn't even know he should have seized it. The detective that was the main detective didn't have any of this knowledge. There was... They finally got this information from the person, from Homeland Security, about this special way, this defect in the program, the way it would put things there, and that we would need to... There would be something there. So there was a lot of layers of who would have had this knowledge. And then, of course, it's outside the police. It's a private company, Axiom or Celebrite or whoever it is that's developing this. Whether they're even working on... There was no evidence about when it should be expected there. Finally, in my remaining 20 seconds, let me go to due diligence. That is briefed well, but due diligence or the diligence of the police during those six days where they take a three-day not work, don't have anybody else, and the eight months cannot fit any definition of acting with diligence that I can find in the dictionary, which is constant, painstaking, all of those things. It just doesn't fit under reasonable diligence. Thank you all. All right. Thank you, counsel, for your arguments this morning. That concludes the morning's calendar. That last case will also be submitted, and we will be in recess until tomorrow morning.
judges: FLETCHER, NGUYEN, Bennett